David B. Rosenbaum, 009819
Anne M. Chapman, 025965
OSBORN MALEDON, P.A.
2929 North Central Avenue, Suite 2100
Phoenix, Arizona 85012-2793
(602) 640-9000
achapman@omlaw.com
drosenbaum@omlaw.com

Eugene F. Assaf, DC Bar 449778 (*Pro Hac Vice*)
K. Winn Allen, DC Bar 1000590 (*Pro Hac Vice*)
Kirkland & Ellis, LLP
655 Fifteenth St. N.W.
Washington, D.C. 20005
(202) 879-5078
eugene.assaf@kirkland.com
winn.allen@kirkland.com

Douglas H. Meal, MA Bar 340971 (*Pro Hac Vice*)
Ropes & Gray, LLP
Prudential Tower, 800 Boylston Street
Boston, MA  02199-3600
(617) 951-7517
douglas.meal@ropesgray.com

Attorneys for Defendants

## IN THE UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Federal Trade Commission,<br><br>        Plaintiff,<br><br>vs.<br><br>Wyndham Worldwide Corporation, et. al.,<br><br>        Defendants. | Case No. CV 12-1365-PHX-PGR<br><br>**REPLY IN SUPPORT OF MOTION TO DISMISS BY DEFENDANTS WYNDHAM WORLDWIDE CORP., WYNDHAM HOTEL GROUP, LLC, & WYNDHAM HOTEL MANAGEMENT, INC.** |

**INTRODUCTION**

The FTC rests its opposition brief on the false premise that the Commission does not have to play by the same rules as other litigants.  It is a bedrock principle of law that distinctions in corporate identities must be respected absent extraordinary circumstances.  The FTC says that it should not be held to that demanding standard.  Routine features of doing business among corporate affiliates—such as sharing office space and having employees with overlapping job responsibilities—are typically insufficient to hold all affiliates jointly and severally liable.  The FTC, however, says that those facts suffice here.  And although common enterprise liability is typically limited to circumstances in which individuals move funds and assets back and forth between shell entities to avoid liability, the FTC says that the doctrine can apply to the defendants in this case, each of which is engaged in legitimate (and separate) business pursuits.

The FTC's arguments lack merit.  In actions brought under Section 5 of the FTC Act, no less than other areas of the law, courts respect corporate distinctions except in the "highly unusual circumstance[]" in which a defendant is trying to use the corporate form to escape liability.  *P.F. Collier & Son Corp. v. FTC*, 427 F.2d 261, 266 (6th Cir. 1970).  That is not what is going on here.  Wyndham Worldwide Corp. ("WWC"), Wyndham Hotel Group, LLC ("WHG"), Wyndham Hotel Management, Inc. ("WHM"), and Wyndham Hotels and Resorts, LLC ("WHR") are each separate corporate entities with their own legitimate businesses.  They are not the types of companies that are typically targeted by the FTC's "common enterprise" theory.  And although each of the defendants is related to one another, those ties are hardly unusual in modern day corporate America.  That is precisely why courts routinely refuse to disregard corporate distinctions on the basis of such allegations.  In other words, this is not a case in which common-enterprise liability is recognized or warranted.  WWC, WHG, and WHM should be dismissed.

1

1

2

## I.  THE  FTC's  COMMON  ENTERPRISE  ALLEGATIONS  FAIL  AS  A MATTER OF LAW

3 As WWC, WHG, and WHM explained in their motion to dismiss, the Amended

4 Complaint nowhere sets forth the rigorous factual prerequisites that would justify

5 setting aside corporate distinctions and treating all of the defendants as a common

6 enterprise.  Mot. to Dismiss by Defs. WWC, WHG, & WHM ("WWC Mot. to

7 Dismiss") at 5-8.  The Amended Complaint devotes only one paragraph to explaining

8 why the defendants should be treated as a common enterprise, *see* Am. Compl. ¶ 11,

9 and that paragraph is bereft of any developed factual allegations showing why the Court

10 should ignore corporate formalities.  Unable to strengthen those thin allegations, the

11 FTC attempts first to lower the high legal hurdle to establishing common-enterprise

12 liability, and then to morph those few facts that it has alleged from routine corporate

13 practices into indicia of wrongdoing.  This Court should reject those arguments.

14 To begin, the legal standard the FTC would have this Court apply is far too

15 lenient.  *See* FTC Opp. at 3, 6 (applying a simple balancing test in which "[n]o one

16 factor is controlling").  "The general rule is that, absent **highly unusual circumstances**,

17 the corporate entity will not be disregarded."  *P.F. Collier & Son*, 427 F.2d at 266

18 (emphasis added).  And as the FTC's own cases acknowledge, that general rule applies

19 as much to actions brought under Section 5 of the FTC Act as it does in other areas of

20 the law.  *Id.*; *see also United States v. ACB Sales & Serv., Inc.*, 590 F. Supp. 561, 574

21 (D. Ariz. 1984) (applying the "common law" rule in a Section 5 case that "the

22 separation between corporate entities will not be disregarded absent special

23 circumstances showing that the corporations should be deemed a single economic

24 enterprise.").

25 Trying to dilute that demanding standard, the FTC argues that "strict adherence"

26 to the general rule is not required where there is evidence that a defendant is trying to

27 manipulate the corporate form to avoid Section 5 liability.  *See* FTC Opp. at 6.  The

28 Amended Complaint, however, nowhere alleges that the defendants are attempting to

shift assets or funds between corporate entities in an attempt to avoid liability. Instead, the FTC surmises that "if the Court were to enter an order against only [WHR], Wyndham would be able to transfer responsibility for information security to another entity … and, as a result, avoid prospective enforcement actions." *Id.* at 6. But that makes no sense. Even under the FTC's interpretation of Section 5, legal obligations attach to the entity that collects or uses consumer information, not to the entity that provides data-security services. *See* FTC, Protecting Consumer Privacy in an Era of Rapid Change, at 22 (Mar. 2012), available at http://www.ftc.gov/os/2012/03/120326privacyreport.pdf (acknowledging that the Commission's "privacy framework" applies only to "commercial entities that collect or use consumer data that can be reasonably linked to a specific consumer, computer, or other device"). Regardless of what entity in the corporate family provides data-security services, WHR itself will bear ultimate legal responsibility under the FTC's theory for the consumer information that it collects and stores on its own computer network, just as it would if it had outsourced its data-security efforts to an independent third party.

Even setting aside the FTC's legal errors, the Commission fails to allege many of the key facts typically required to establish common-enterprise liability. As defendants explained in their motion to dismiss, and as the FTC does not dispute, the Amended Complaint does not allege that the defendants commingle corporate funds or assets, lack their own substantive businesses, fail to maintain separate books and records, or disregard corporate formalities when dealing with third parties. *See* WWC Mot. to Dismiss at 6-7; *see also FTC v. Grant Connect, LLC*, 827 F. Supp. 2d 1199, 1216 (D. Nev. 2011) (asking whether defendants "commingl[e] corporate funds … fail[] to maintain separation of companies," or engage in "unified advertising"); *FTC v. Data Med. Capital, Inc.*, 2010 WL 1049977, at *23 (C.D. Cal. Jan. 15, 2010) (asking whether corporate entities "have their own substantive businesses" or "commingl[e] … corporate assets"). In other words, there is nothing in the Amended Complaint to suggest that "no real distinction exists between the corporate defendants," *Grant*

3

*Connect*, 827 F. Supp. 2d at 1216, and that is what is typically required to prove common-enterprise liability.

At their core, the FTC's common-enterprise allegations reduce to three facts: (i) the defendants share office space; (ii) some employees have overlapping responsibilities with several entities; and (iii) WWC and WHG "have performed various business functions on behalf of [WHR] … including legal assistance, human resources, finance, and information technology and security."  Am. Compl. ¶ 9; *see also* FTC Opp. at 4-6.[1] Those facts merely reflect the hallmarks of modern corporate structure, in which affiliated companies maintain their legal separateness, but also synergize by sharing certain functions.  *See United States v. Universal Health Servs., Inc.*, 2010 WL 4323082, at *4 (W.D. Va. Oct. 31, 2010) (explaining that the type of overlap alleged by the FTC is "hardly unusual in corporate structure").  Courts thus "routinely refuse" to disregard corporate distinctions merely because corporate affiliates share employees or because parent companies perform services for their subsidiaries.  *See, e.g.*, *Spagnola v. Chubb Corp.*, 264 F.R.D. 76, 87 (S.D.N.Y. 2010) (refusing to disregard corporate distinctions "based on allegations limited to the existence of shared office space or overlapping management, allegations that one company is the wholly-owned subsidiary of another, or that companies are to be 'considered as a whole.'"); *In re BH S & B Holdings, LLC*, 420 B.R. 112, 138 (Bankr. S.D.N.Y. 2009) (noting that it is "well-established" that corporate affiliates "may share officers, directors, and employees … without requiring the court to infer that the subsidiary is a mere instrumentality for the parent"); *Seiko Epson Corp. v. Print-Rite Holdings, Ltd.*, 2002 WL 32513403, at *23 (D. Oregon Apr. 30, 2002) (refusing to disregard corporate distinctions "even though Management performs some functions on behalf of [both entities] and some overlap of personnel and resources exists between these companies"); *see also Kramer Motors,*

---

[1]  The FTC also argues that defendants conduct business "through a maze of interrelated companies."  FTC Opp. at 4.  That argument has no independent substantive content, but merely restates under a different heading the facts and circumstances that the FTC believes justify common-enterprise treatment in this case.

*Inc. v. British Leyland, Inc.*, 628 F.2d 1175, 1177 (9th Cir. 1980) (refusing to disregard corporate distinctions where entities shared officers and directors and parent was responsible for certain operations of subsidiary).

Defendants explained in their motion to dismiss how finding a common enterprise on these facts alone would drastically expand the scope of Section 5 and subject all manner of corporations to derivative liability for the acts of any other member of the corporate family. *See* WWC Mot. to Dismiss at 7-8. Tellingly, the FTC offers no response at all to that point. And although the FTC cites a number of cases that purportedly support its position, those cases only confirm that this case is far afield from the circumstances in which common-enterprise liability is typically invoked. *See, e.g.*, *FTC v. Network Servs. Depot, Inc.*, 617 F.3d 1127, 1143 (9th Cir. 2010) (common enterprise where "companies pooled resources, staff, and funds; they were all owned and managed by [an individual] and his wife; and they all participated to some extent in a common venture to sell internet kiosks"); *FTC v. John Beck Amazing Profits, LLC*, 2012 WL 2044791, at *1 (C.D. Cal. Apr. 20, 2012) (common enterprise where individual defendants were "sole members" of partnership that "owned and controlled the corporate defendants in this lawsuit"); *Grant Connect*, 827 F. Supp. 2d at 1216-17 (common enterprise where wrongful conduct was "run by the same individuals using different company names," where defendants "changed entity names and swapped and shared personnel … blurred the line of corporate separateness … and coordinated action across campaigns and made their profits interdependent.").

## II. THE AMENDED COMPLAINT FAILS TO ADEQUATELY ALLEGE DIRECT LIABILITY AGAINST WWC, WHG, OR WHM

The FTC's Amended Complaint does not allege, when read fairly and naturally, that WWC, WHG, or WHM ***themselves*** engaged in any "deceptive" or "unfair" conduct. *See* WWC Mot. to Dismiss 4-5. To the contrary, the great majority of the FTC's deception and unfairness allegations focus solely on the statements and conduct of WHR and the independently owned Wyndham-branded hotels. *Id*. at 4. And even

5

those few paragraphs that do allege conduct by all "defendants," are too conclusory and undeveloped to comply with basic federal-pleading requirements. *Id*. at 4-5. Nonetheless, seizing on those few paragraphs that it can identify, the FTC maintains that the Amended Complaint "alleges direct liability as to each of the Wyndham entities." FTC Opp. at 1; *see also id*. at 2 ("The Complaint alleges that [WWC, WHG, and WHR, and WHM] are directly liable for the unfair and deceptive acts and practices at issue."). That is simply wishful thinking.[2]

## A. The Amended Complaint Does Not Allege Deception By WWC, WHG, or WHM

Contrary to the FTC's assertions, the Amended Complaint does not allege that "all four Wyndham entities have made deceptive representations." *Id*. at 7. The ***only*** allegedly deceptive statements identified in the Amended Complaint are those included in an online privacy policy that was "disseminated on [WHR]'s website." Am. Compl. ¶ 21; *id*. ¶ 22 ("There is a link to this privacy policy on each page of the [WHR] website."). The Amended Complaint alleges no other purportedly deceptive statements made by any of the other defendants in this case. Instead, through various means, the FTC seeks to attribute the privacy policy on WHR's website to WWC, WHG, and WHM. None of those arguments is convincing.

*First*, the FTC argues that WWC is directly liable for deception because it "was responsible for the data security of the [WHR] network during the third breach." FTC Opp. at 7. But whether WWC had responsibility for data-security at WHR for a period of time does nothing at all to establish that WWC made the allegedly deceptive statements included in the WHR privacy policy. Indeed, WWC is not mentioned at all in the privacy policy, other than to ***dissociate*** WWC from the other corporate entities

---

[2] As an initial matter, defendants reiterate that even if the Amended Complaint could be construed to allege direct liability against WWC, WHG, and WHM, any such claims would fail as a matter of law for the reasons stated in the motion to dismiss filed by defendant WHR. *See* WWC Mot. to Dismiss at 5 n.1. Thus, to the extent the Court reads some or all of the Amended Complaint as adequately alleging direct liability again WWC, WHG, and WHM, those defendants join in and incorporate by reference all of the arguments contained in WHR's motion to dismiss and WHR's reply brief in support of its motion to dismiss.

1    that are indentified.  *See* WHR Mot. to Dismiss, Ex. 1, Allen Decl., Ex. A.  That is

2    hardly a basis for alleging deception.

3           *Second*, even though the privacy policy contains no reference ***at all*** to WHM, the

4    FTC argues that the statements in the policy nonetheless can be attributed to WHM

5    through a chain of causation: WHM manages certain hotels on behalf of independent

6    hotel owners, and those hotel owners "have websites that direct consumers interested in

7    reservations to [WHR's] website, where the privacy policy is hosted."  FTC Opp. at 7-

8    8.  It is inconceivable that such a tenuous line of reasoning could result in direct liability

9    for deception.  First of all, it is doubtful that the mere act of directing someone to

10   another website could result in liability for any representations made on that website.

11   But even assuming that it could, the Amended Complaint does not allege that WHM

12   actually created, operated, or maintained the websites that allegedly referred consumers

13   to the WHR privacy policy.  Indeed, the Amended Complaint does not even allege that

14   the hotels with such websites were managed by WHM at all.  These omissions are fatal

15   to the FTC's attempts to hold WHM directly liable for deception.

16          *Third*, the FTC argues that WHG is liable for deception because the privacy

17   policy "is identified as being the privacy policy of [WHG]."  *Id*. at 7.  But simply

18   alleging that WHG made statements about data security in the privacy policy is not

19   sufficient to allege a plausible claim for deception.  Instead, the FTC must also allege

20   sufficient facts showing ***why*** WHG's statements about its own data-security practices

21   were deceptive.  It has not done that.  The Amended Complaint contains no developed

22   factual allegations explaining how WHG's data-security practices were not

23   "commercially reasonable" or compliant with "industry standard practices."  Am.

24   Compl. ¶ 21 (quoting privacy policy).  The FTC has thus failed adequately to allege

25   deceptive statements by WHG.

26

27

28

**B. The Amended Complaint Does Not Allege Unfair Acts By WWC, WHG, or WHM**

The FTC also cannot replead its Amended Complaint to include claims of "unfair acts or practices" against WWC, WHG, and WHM that it has not heretofore alleged. *See* FTC Opp. at 8. The Amended Complaint's unfairness allegations are directed solely at the conduct of WHR and the independently-owned Wyndham-branded hotels. *See, e.g.*, Am. Compl. ¶ 24(a) (referring to "the Wyndham-branded hotels property management system" and "the Hotels and Resorts' corporate network"); ¶ 24(b) (referring to software at the "Wyndham-branded hotels"); ¶ 24(d) (referring to "Wyndham-branded hotels' servers" and the "Hotels and Resorts' computer network") ¶ 24(e) (referring to "Hotels and Resorts' corporate network"); ¶ 24(g) (referring to the "Hotels and Resorts' network"); ¶ 24(i) (referring to "Hotels and Resorts' computer network"). Other than a few stray instances in which the FTC alleges that all of the "Defendants" engaged in certain conduct, the Amended Complaint contains no developed factual allegations explaining how WWC, WHG, or WHM engaged in any unfair conduct. *See* WWC Mot. to Dismiss at 4-5. That should be the end of the matter.

The FTC's attempts to argue otherwise should be rejected. The fact that WWC and WHG allegedly "assumed responsibility for the information security program" at WHR at various times, is simply a repackaging of the FTC's argument that all of the defendants in this case were engaged in a common enterprise because "various business functions … were shared." FTC Opp. at 5. It is not an allegation of direct liability. And the Amended Complaint contains no developed allegations explaining what "unfair" conduct WHM engaged in while performing management duties for certain independently owned Wyndham-branded hotels.

**CONCLUSION**

For these reasons, WWC, WHG, and WHM cannot be held directly or derivatively liable for any violation of Section 5 of the FTC Act. The Amended Complaint thus should be dismissed with respect to those entities.

8

1

DATED this 23rd day of October, 2012.

2

OSBORN MALEDON, P.A.

3

By s/David B. Rosenbaum

4

David B. Rosenbaum
Anne M. Chapman

5

2929 North Central Avenue, Suite 2100

6

Phoenix, Arizona  85012-2794

7

Eugene F. Assaf, P.C., 449778, *pro hac vice*

8

K. Winn Allen, 1000590, *pro hac vice*
Kirkland & Ellis LLP

9

655 Fifteenth Street, N.W.

10

Washington, D.C.  20005

11

Douglas H. Meal, 340971, *pro hac vice*
Ropes & Gray, LLP

12

Prudential Tower, 800 Boylston Street

13

Boston, MA  02199-3600

14

Attorneys for Defendants

15

16

17

18

19

20

21

22

23

24

25

26

27

28

9

1

**CERTIFICATE OF SERVICE**

2

☒

I hereby certify that on October 23, 2012, I electronically transmitted the attached document to the Clerk's Office using the CM/ECF System for filing and transmittal of a Notice of Electronic Filing to all CM/ECF registrants.

3

4

5

s/Kelly Dourlein

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28