Lisa Weintraub Schifferle (DC Bar No. 463928)
Kristin Krause Cohen (DC Bar No. 485946)
Kevin H. Moriarty (DC Bar No. 975904)
Katherine E. McCarron (DC Bar No. 486335)
John A. Krebs (MA Bar No. 633535)
Jonathan E. Zimmerman (MA Bar No. 654255)
Andrea V. Arias (DC Bar No. 1004270)
Federal Trade Commission
600 Pennsylvania Ave., NW Mail Stop NJ-8100
Washington, D.C. 20580
Telephone:  (202) 326-2276
Fax:  (202) 326-3062
Attorneys for Plaintiff Federal Trade Commission

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF NEW JERSEY**

| | |
|---|---|
| FEDERAL TRADE COMMISSION,<br><br>　　　　　　　Plaintiff,<br><br>　　　　v.<br><br>WYNDHAM WORLDWIDE<br>CORPORATION, *et al.*,<br><br>　　　　　　　Defendants. | CIVIL ACTION NO.<br>2:13-CV-01887-ES-SCM<br><br>**PLAINTIFF'S RESPONSE IN OPPOSITION TO THE MOTION TO DISMISS BY DEFENDANTS WYNDHAM WORLDWIDE CORPORATION, WYNDHAM HOTEL GROUP, LLC, AND WYNDHAM HOTEL MANAGEMENT, INC.**<br><br>**MOTION DATE JUNE 17, 2013** |

**TABLE OF CONTENTS**

INTRODUCTION ............................................................................................................. 1

FACTUAL BACKGROUND ............................................................................................ 1

LEGAL STANDARD ....................................................................................................... 2

ARGUMENT ..................................................................................................................... 3

   I.  DEFEDANTS' MOTION TO DISMISS SHOULD BE DENIED BECAUSE THE COMPLAINT SUFFICIENTLY ALLEGES THAT THE WYNDHAM ENTITIES ACTED AS A COMMON ENTERPRISE .......................................................3

   II.  NO DEFENDANTS SHOULD BE DISMISSED FROM THE CASE BECAUSE THE COMPLAINT ADEQUATELY ALLEGES DIRECT LIABILITY AGAINST EACH OF THE WYNDHAM ENTITIES ..................................9

      A.  Deception ........................................................................................................ 10

      B.  Unfairness ...................................................................................................... 10

CONCLUSION ................................................................................................................ 12

## TABLE OF AUTHORITIES

**Cases**

*Ashcroft v. Iqbal*, 556 U.S. 662 (2009) .................................................................................... 2

*Bell Atl. Corp. v. Twombly*, 550 U.S. 544 (2007) .................................................................... 2

*Del. Watch Co. v. FTC*, 332 F.2d 745 (2d Cir. 1964) ............................................................ 4, 5

*FTC v. Consumer Health Benefits Ass'n*, No. 10-CIV-3551, 2012 WL 1890242 (E.D.N.Y. May 23, 2012) ........................................................................................................ 9

*FTC v. Grant Connect, LLC*, 827 F. Supp. 2d 1199 (D. Nev. 2011) ............................................ 8

*FTC v. Millennium Telecard, Inc.*, No. 11-2479, 2011 WL 2745963 (D.N.J. July 12, 2011) 4, 8, 9

*FTC v. Network Servs. Depot, Inc.*, 617 F.3d 1127 (9th Cir. 2010) ............................................ 4

*FTC v. NHS Systems, Inc.*, No. 08-2215, 2013 WL 1285424 (E.D. Pa. Mar. 28, 2013) ........... 4, 9

*FTC v. Think Achievement Corp.*, 144 F. Supp. 2d 993 (N.D. Ind. 2000) .................................. 4

*FTC v. Wolf*, No. 94-8119, 1996 WL 812940 (S.D. Fla. Jan. 31, 1996) ..................................... 4

*P.F. Collier & Son Corp. v. FTC*, 427 F.2d 261 (6th Cir. 1970) ................................................. 8

*Phillips v. Cnty. of Allegheny*, 515 F.3d 224 (3d Cir. 2008) ...................................................... 3

*Pinker v. Roche Holdings Ltd.*, 292 F.3d 361 (3d Cir. 2002) ..................................................... 3

*SEC v. Elliot*, 953 F.2d 1560 (11th Cir. 1992) ......................................................................... 4

*Sunshine Arts Studios, Inc. v. FTC*, 481 F.2d 1171 (1st Cir. 1973) ............................................ 4

*Waltham Precision Instrument Co. v. FTC*, 327 F.2d 427 (7th Cir. 1964) ............................... 4, 5

*Zale Corp. & Corrigan-Republic, Inc. v. FTC*, 473 F.2d 1317 (5th Cir. 1973) ........................... 4

**Statutes**

15 U.S.C. § 45(a)(2) ................................................................................................................ 9

15 U.S.C. § 45(n) ........................................................................................................................ 11

15 U.S.C. § 53(b) ......................................................................................................................... 1

**Rules**

Fed. R. Civ. P. 12(b)(6) ................................................................................................................. 1

Fed. R. Civ. P. 8(a)(2) ................................................................................................................... 2

INTRODUCTION

The Federal Trade Commission ("FTC") opposes the separate motion to dismiss this action by Wyndham Worldwide Corporation ("Wyndham Worldwide"), Wyndham Hotel Group, LLC ("Hotel Group"), and Wyndham Hotel Management, Inc. ("Hotel Management") pursuant to Federal Rule of Civil Procedure 12(b)(6) on the grounds that the Complaint does not plausibly allege a common enterprise among the four Wyndham entities.  This motion fails because the Complaint both alleges a common enterprise among the four Wyndham entities and also alleges direct liability as to each of them.  Either of these grounds is sufficient to deny the motion to dismiss.

FACTUAL BACKGROUND

On June 26, 2012, the FTC filed a two-count Complaint against Wyndham Worldwide, Hotel Group, Wyndham Hotels and Resorts ("Hotels and Resorts"), and Hotel Management (collectively, "Wyndham" or "Defendants") under Section 13(b) of the Federal Trade Commission Act ("FTC Act").  15 U.S.C. § 53(b).  The FTC subsequently amended its complaint on August 9, 2012.  *See* First Amended Complaint for Injunctive and Other Equitable Relief, ECF No. 28 (the "Complaint").  Following the transfer of this case, Wyndham filed two motions to dismiss.  ECF No. 91; ECF No. 92.  This brief addresses the motion filed by Wyndham Worldwide, Hotel Group, and Hotel Management ("Wyndham Worldwide Mot."), ECF No. 92-1, which argues that those entities have no liability for the allegations in the Complaint.  This opposition is filed contemporaneously with Plaintiff's Response in Opposition to the Motion to Dismiss by Hotels and Resorts and therefore will address only those facts relevant to the instant motion.

Wyndham Worldwide is in the hospitality business.  Compl. ¶ 7.  Through its subsidiaries, it manages and franchises hotels throughout the United States.  *Id.*  One of its

1

subsidiaries is Hotel Group, which has its offices at the same address as Wyndham Worldwide. *Id.* at ¶ 8. Hotel Group, through its subsidiaries, franchises and manages a large number of hotel brands, including Wyndham and Wingate by Wyndham, as well as many non-Wyndham brands, such as Days Inn, Super 8, Ramada, Howard Johnson, and Travelodge. Wyndham Worldwide Mot. at 3.

Hotel Group has two subsidiaries that are relevant here: Hotels and Resorts, and Hotel Management. Compl. ¶¶ 9-10. Both of these Wyndham entities share office space and offices with Wyndham Worldwide and Hotel Group, and both license the "Wyndham" name to independently-owned hotels ("Wyndham-branded hotels") through either franchise agreements, in the case of Hotels and Resorts, or management agreements, in the case of Hotel Management. *Id.* In addition to licensing the name, Hotel Management "fully operate[s]" the Wyndham-branded hotels to which it licenses the Wyndham name. *Id.* at ¶ 10.

The Complaint alleges that Defendants are jointly and severally liable because they operate as a common enterprise, and also that they are directly liable for the unfair and deceptive acts and practices at issue. As described below, the allegations in the Complaint satisfy the legal standard, and thus Wyndham Worldwide's motion to dismiss should be denied.

## LEGAL STANDARD

Rule 8(a)(2) requires a complaint to include a "short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). To survive a motion to dismiss pursuant to Rule 12(b), the FTC's Complaint need only allege enough facts to "state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the Court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* In reviewing a Rule 12(b)(6) motion to

2

dismiss for failure to state a claim, courts "'accept all factual allegations as true, construe the complaint in the light most favorable to the plaintiff, and determine whether, under any reasonable reading of the complaint, the plaintiff may be entitled to relief.'" *Phillips v. Cnty. of Allegheny*, 515 F.3d 224, 233 (3d Cir. 2008) (quoting *Pinker v. Roche Holdings Ltd.*, 292 F.3d 361, 374 n.7 (3d Cir. 2002)).

## ARGUMENT

Plaintiff's Complaint meets the requirements of Rule 8(a)(2). The Wyndham Worldwide Motion argues that the Wyndham entities other than Hotels and Resorts should be dismissed because they cannot be held derivatively liable for Hotels and Resorts' unfair and deceptive practices. This argument fails for two reasons: First, the Complaint sufficiently alleges that the four Wyndham entities have operated as a common enterprise. Second, the Complaint pleads that all four Wyndham entities are also directly liable for violating Section 5 of the FTC Act.

**I. DEFENDANTS' MOTION TO DISMISS SHOULD BE DENIED BECAUSE THE COMPLAINT SUFFICIENTLY ALLEGES THAT THE WYNDHAM ENTITIES ACTED AS A COMMON ENTERPRISE.**

Plaintiff's Complaint pleads sufficient facts to establish a plausible claim that the four Wyndham entities—Wyndham Worldwide, Hotel Group, Hotels and Resorts, and Hotel Management—acted as a common enterprise. At the motion to dismiss phase, the Court must accept all factual allegations in the Complaint as true. Therefore, Wyndham could only prevail on this motion to dismiss if the Court were to find that despite the fact that Defendants: (1) exercised common control; (2) shared office space; (3) operated through a maze of interrelated companies; and (4) pooled resources and staff, no common enterprise existed among the corporate entities. This conclusion would be at odds with a large body of federal law on common enterprise liability under Section 5 of the FTC Act. Therefore, the motion to dismiss should be denied.

3

There is well-developed case law examining the non-exclusive factors a court should consider when determining whether a common enterprise exists under Section 5 of the FTC Act.[1]  The District of New Jersey recently opined that "when determining whether a common enterprise exists, courts look to a variety of factors, including: common control, the sharing of office space and officers, whether business is transacted through a maze of interrelated companies, unified advertising, and evidence which reveals that no real distinction existed between the [c]orporate [d]efendants."  *FTC v. Millennium Telecard, Inc.*, No. 11-2479, 2011 WL 2745963, at *8 (D.N.J. July 12, 2011) (quoting *FTC v. Wolf*, No. 94-8119, 1996 WL 812940, at *7 (S.D. Fla. Jan. 31, 1996)) (internal quotations omitted).  *See also FTC v. NHS Sys., Inc.*, No. 08-2215, 2013 WL 1285424, at *7 (E.D. Pa. Mar. 28, 2013) (applying the same standard and finding defendants jointly and severally liable for unfair and deceptive acts and practices in violation of the FTC Act).  Other Courts of Appeals have recognized additional factors in determining whether a common enterprise exists, including "pooled resources [and] staff."  *FTC v. Network Servs. Depot, Inc.*, 617 F.3d 1127, 1143 (9th Cir. 2010).  No one factor is controlling, as "the pattern and frame-work of the whole enterprise must be taken into consideration."  *Del. Watch Co. v. FTC*, 332 F.2d 745, 746 (2d Cir. 1964) (internal quotations and citation omitted).

Nor is application of the common enterprise test limited to any particular circumstance.  In fact, courts find the existence of a common enterprise in a myriad of situations, including where the companies, similar to here, engaged in deception or misrepresented the nature of their

---

[1] *See FTC v. Think Achievement Corp.*, 144 F. Supp. 2d 993, 1011 (N.D. Ind. 2000) (citing *Sunshine Arts Studios, Inc. v.* FTC, 481 F.2d 1171, 1175 (1st Cir. 1973), *Del. Watch Co. v. FTC*, 332 F.2d 745, 746-47 (2d Cir. 1964), *Waltham Precision Instrument Co. v. FTC*, 327 F.2d 427, 431 (7th Cir. 1964), *Zale Corp. & Corrigan-Republic, Inc. v. FTC*, 473 F.2d 1317, 1320 (5th Cir. 1973), and *SEC v. Elliot*, 953 F.2d 1560, 1565 n.1 (11th Cir. 1992)); *FTC v. Wolf*, No. 94-8119, 1996 WL 812940, at *7 (S.D. Fla. Jan. 31, 1996) (citing the same appellate cases).

goods and services. *Del. Watch Co.*, 332 F.2d at 746-47 (finding that corporate entities engaged in a deceptive advertising campaign were transacting an integrated business through a maze of interrelated companies). *See also Waltham Precision Instrument Co. v. FTC*, 327 F.2d 427, 431 (7th Cir. 1964) (treating all defendants in a deceptive advertising case as a single entity where there was common control and they shared the same officers and directors).

Applying the common enterprise factors, the Complaint alleges sufficient facts that, taken as true, plead a claim that the Wyndham entities operate as a common enterprise. As part of their common enterprise, each Wyndham entity played a role in the unreasonable data security practices at issue in the Complaint—from controlling the corporate computer network, to managing the property management systems at the hotels, to operating the hotels themselves. The Complaint specifically pleads (1) common control, (2) shared office space and offices, (3) that business is transacted through a maze of interrelated companies, and (4) pooled resources and staff, each of which is addressed more fully below.

**Common Control**. The common control prong is particularly salient to the Wyndham entities' management of their information security practices. The Complaint alleges that both Hotel Group and Wyndham Worldwide controlled the information security of Hotels and Resorts' network during relevant time periods:

> From at least 2008 until approximately June 2009, Hotel Group had responsibility for managing Hotels and Resorts' information security program. In June 2009, Wyndham Worldwide took over management and responsibility for Hotels and Resorts' information security program.

Compl. ¶ 14. The Complaint also alleges that there was common control and ownership of the Wyndham entities by Wyndham Worldwide and Hotel Group. *Id.* at ¶¶ 7-8 (stating that parent Wyndham entities "controlled the acts and practices of [their] subsidiaries").

5

**Shared Office Space and Offices**.  The Complaint alleges that each of the four Wyndham entities share office space and offices.  *Id.* at ¶¶ 7-10 (identifying the place of business of each Wyndham entity as 22 Sylvan Way, Parsippany, New Jersey 07054).

**Maze of Interrelated Companies**.  The Complaint pleads that both Hotels and Resorts and Hotel Management license the "Wyndham" name to Wyndham-branded hotels.  *Id.* at ¶¶ 9-10.  The Complaint further alleges that both of these entities require the "Wyndham-branded hotel to purchase, and configure to their specifications, a . . . property management system [which is] part of Hotels and Resorts' computer network . . . ."  *Id.* at ¶¶ 15-16.  Wyndham's privacy policy similarly invokes several different Wyndham entities:  It is hosted on a website called "Wyndham"; it is the privacy policy of Hotels and Resorts, *id.* at ¶ 21; it expressly states that it is the privacy policy of Hotel Group, *id.* at ¶ 23; and it refers readers to the Wyndham Worldwide website "[f]or more information on our affiliates."  Wyndham Hotel Group, LLC Customer Privacy Policy and Information Practices Statement ("Wyndham Privacy Policy") at 1, ECF No. 91-3.  These allegations, in conjunction with the allegation that Hotels and Resorts, Wyndham Worldwide, and Hotel Group were responsible at various times for the information security of Hotels and Resorts' computer network, Compl. ¶ 14, establish that Defendants' business operations, and in particular their data security practices, are managed and directed by a maze of interrelated companies.

**Pooled Resources and Staff**.  The FTC further alleges that various business functions and employees are shared among the Wyndham entities.  *See, e.g.*, *id.* at ¶ 9 ("Hotel Group and Wyndham Worldwide have performed various business functions on behalf of Hotels and Resorts, or overseen such business functions, including legal assistance, human resources, finance, and information technology and security."); *id.* at ¶ 10 ("Hotel Group and Wyndham

6

Worldwide have performed various business functions on Hotel Management's behalf, or overseen such business functions, including legal assistance and information technology and security."); *id.* at ¶ 11 ("Defendants have conducted their business practices described below through an interrelated network of companies that have common ownership, business functions, employees, and office locations.").

Wyndham's representations in this litigation confirm that no real distinction exists among the Defendants. For example, Wyndham represents that a single individual, Tim Voss, "has overall responsibility for data-security efforts at [Wyndham Worldwide] and *all of its subsidiaries*." Def.'s Mot. to Transfer Venue at 8, ECF No. 23 (emphasis added). Another individual, Bob Loewen, is the "Chief Financial Officer at [Hotel Group]," but Wyndham states that he has "knowledge of the expenditures made to respond to the intrusions" of Hotels and Resorts' network. *Id*. Kirsten Hotchkiss is the "Senior Vice President, Employment Counsel at [Wyndham Worldwide]" and "was involved in coordinating the response to all three intrusions," which Wyndham claims happened at Hotels and Resorts. *Id.* at 8-9. A former employee, Jim Copenheaver, was the "Vice President of Security & Compliance at [Hotel Group]," but is said to have worked at "[Wyndham Worldwide's] New Jersey headquarters," and "had general responsibility for the response to the first criminal data intrusion" of Hotels and Resorts' network. *Id.* at 9.

Defendants rely on a selective application of the common enterprise factors—notably they exclude common control, shared office space, a maze of interrelated companies, and pooled staff and resources from their analysis—to argue that the Complaint fails to allege sufficient facts to establish a common enterprise. *See* Wyndham Worldwide Mot. at 8. Contrary to the

7

Defendants' contention, the FTC has pled sufficient facts to enable the Court to draw the reasonable inference that Defendants acted as a common enterprise.

Defendants further muddy the waters by citing inapposite cases addressing the question of when a court may pierce the corporate veil and hold a shareholder liable for the actions of a corporation. *See* Wyndham Worldwide Mot. at 7-9. These cases generally involve corporations who have abused the privilege of incorporation by using their subsidiaries to perpetrate a fraud or injustice, or otherwise to circumvent the law. Courts addressing common enterprise, however, have noted that the analysis is **not** the same as the alter-ego analysis or piercing the corporate veil, *see, e.g.*, *FTC v. Grant Connect, LLC*, 827 F. Supp. 2d 1199, 1218 (D. Nev. 2011), which is a very different test than the factors required to find a common enterprise under Section 5 of the FTC Act. S*ee, e.g.*, *Millennium Telecard*, 2011 WL 2745963, at *8.

Defendants also rely on *P.F. Collier & Son Corp. v. FTC*, 427 F.2d 261, 266 (6th Cir. 1970), for the proposition that absent highly unusual circumstances, the corporate entity should not be disregarded. *See* Wyndham Worldwide Mot. at 1, 7, 10. Although the court in *P.F. Collier* acknowledges the importance of corporate formalities, it states that "where the public interest is involved, as it is in the enforcement of Section 5 of the Federal Trade Commission Act, a strict adherence to common law principles is not required in the determination of whether a parent should be held for the acts of its subsidiary, where strict adherence would enable the corporate device to be used to circumvent the policy of the statute." 427 F.2d at 267 (concluding that the parent dominated and controlled the subsidiary such that they formed a single enterprise for purposes of Section 5).

The Complaint seeks to hold the Defendants jointly and severally liable as a common enterprise for the purpose of a prospective order.  *See* Compl. at Prayer for Relief.[2]  If the Court were to enter an order against only Hotels and Resorts, Wyndham would be able to transfer responsibility for data security to another Wyndham entity—as it has done in the past, Compl. ¶ 14—and, as a result, avoid prospective enforcement actions regarding deceptive or unfair acts or practices related to data security.[3]  *See NHS Sys.*, 2013 WL 1285424, at *7 (observing the importance of common enterprise in circumstances when "a judgment absolving one [defendant] of liability would provide the other defendants with a clear mechanism for avoiding the terms of the order" (internal quotation marks and citation omitted)).

As cases applying the common enterprise factors under the FTC Act demonstrate, the analysis is a fact-specific inquiry.  *See, e.g.*, *Millennium Telecard*, 2011 WL 2745963, at *8-9; *NHS Sys.*, 2013 WL 1285424, at *7-8.  The Complaint pleads sufficient facts that, taken as true, establish a plausible claim of common enterprise and, thus, a motion to dismiss is inappropriate.  *See, e.g.*, *FTC v. Consumer Health Benefits Ass'n*, No. 10-CIV-3551, 2012 WL 1890242, at *3-8 (E.D.N.Y. May 23, 2012) (denying a motion to dismiss where the complaint contained sufficient factual allegations regarding common enterprise).

## II.     NO DEFENDANTS SHOULD BE DISMISSED FROM THE CASE BECAUSE THE COMPLAINT ADEQUATELY ALLEGES DIRECT LIABILITY AGAINST EACH OF THE WYNDHAM ENTITIES.

Wyndham alleges that the Complaint lacks allegations "showing how [Wyndham Worldwide], [Hotel Group], or [Hotel Management] made any deceptive representations or

---

[2] *See also* 15 U.S.C. § 45(a)(2) (providing that "[t]he Commission is hereby empowered and directed **to prevent** persons, partnerships, or corporations . . . . from using . . . unfair or deceptive acts or practices in or affecting commerce.") (emphasis added).
[3] There is also nothing stopping Wyndham from transferring ownership of Hotels and Resorts' computer network to another Wyndham entity such as, for example, Hotel Group.

9

engaged in any unfair conduct." Wyndham Worldwide Mot. at 6. This is based on a highly selective reading of the Complaint and, in fact, is plainly wrong. The Complaint alleges that each of the Wyndham entities is liable for Section 5 violations.

### A. Deception

The Complaint pleads that all four Wyndham entities have made deceptive representations, and these allegations are supported by the language of Wyndham's privacy policy. First, as Wyndham concedes, the Wyndham privacy policy makes representations on behalf of Hotels and Resorts. Compl. at ¶ 21; *see also* Wyndham Worldwide Mot. at 5. Second, the Complaint alleges—and it is clear from the face of the privacy policy—that the privacy policy is identified as being the privacy policy of Hotel Group. Compl. ¶ 23; *see also* Wyndham Privacy Policy at 1. Thus, the representations made in the privacy policy were made on behalf of Hotel Group. Third, the Complaint pleads that Wyndham Worldwide "controlled the acts and practices of its subsidiaries," including Hotels and Resorts. Compl. ¶¶ 7, 9. Moreover, Wyndham Worldwide was responsible for the data security of Hotels and Resorts' network during the third breach. *Id.* at ¶ 14. Finally, the Complaint alleges that Hotel Management makes the same representations because it "fully operate[s]," *id.* at ¶ 10, Wyndham-branded hotels, some of which have websites that direct consumers interested in reservations to Hotels and Resorts' website, where the Wyndham privacy policy is hosted. *Id.* at ¶ 20. Thus, the Complaint specifically pleads deceptive practices related to data security as to all four Wyndham entities.

### B. Unfairness

As explained more fully in the FTC's Response in Opposition to the Motion to Dismiss by Hotels and Resorts, filed simultaneously, the Complaint also pleads sufficient facts to state a claim for unfair practices under Section 5 of the FTC Act. The Complaint alleges that

Defendants unreasonable data security practices resulted in substantial consumer injury not reasonably avoidable by consumers and that the consumer injury was not outweighed by countervailing benefits. *See* 15 U.S.C. § 45(n) (setting forth unfairness test). As detailed below, in stating this claim, the Complaint also makes specific allegations as to each Wyndham entity's role in the unfair conduct at issue in the Complaint.

First, as Wyndham concedes, the Complaint alleges unreasonable data practices "related to [Hotels and Resorts'] corporate network or to the separate networks maintained by the Wyndham-branded hotels." Wyndham Worldwide Mot. at 5; *see also* Compl. ¶ 24. Second, the Complaint also alleges that Hotel Group managed the information security program for Hotels and Resorts' network, which lacked reasonable data security. *See* Compl. ¶ 14 ("From at least 2008 until approximately June 2009, Hotel Group had responsibility for managing Hotels and Resorts' information security program."). Third, the Complaint further alleges that in June 2009, following the second breach, but prior to the third, Wyndham Worldwide assumed responsibility for the information security program for the same network. *See id.* ("In June 2009, Wyndham Worldwide took over management and responsibility for Hotels and Resorts' information security program."). Fourth, the Complaint alleges that Hotel Management entered in to management agreements with Wyndham-branded hotels (including some of those that were breached) that permitted Hotel Management to "fully operate the hotel," *id.* at ¶ 10, and required the hotels to "configure [a designated computer system] to their specifications." *Id.* at ¶ 15. Finally, the Complaint specifically alleges unreasonable data security practices engaged in by Defendants collectively. *See, e.g., id.* at ¶ 31 ("These files were created and stored in clear text because *Defendants* had allowed the property management systems to be configured inappropriately to create these files and store the payment card information that way.")

(emphasis added). Thus, the Complaint specifically pleads that each Wyndham entity individually, as well Defendants collectively, engaged in unfair practices related to data security that resulted in the known theft of hundreds of thousands of consumers' payment card account numbers and millions of dollars in fraud loss. *See id.* at ¶ 40. Accordingly, none of the Defendants should be dismissed from the case.

## CONCLUSION

For the foregoing reasons, the FTC respectfully requests that the Court deny Wyndham Worldwide, Hotel Group, and Hotel Management's motion to dismiss.

Dated: May 20, 2013.

Respectfully submitted,

      s/ Katherine E. McCarron
Lisa Weintraub Schifferle
Kristin Krause Cohen
Kevin H. Moriarty
Katherine E. McCarron
John A. Krebs
Jonathan E. Zimmerman
Andrea V. Arias
Federal Trade Commission
600 Pennsylvania Ave., NW Mail Stop NJ-8100
Washington, D.C. 20580

Attorneys for Plaintiff Federal Trade Commission