# EXHIBIT A



JENNIFER A. HRADIL
Director

Gibbons P.C.
One Gateway Center
Newark, New Jersey 07102-5310
Direct: (973) 596-4495 Fax: (973) 639-6487
jhradil@gibbonslaw.com

September 16, 2014

**VIA ECF**

The Honorable Joseph A. Dickson, U.S.M.J.
United States District Court
District of New Jersey
50 Walnut Street
Newark, New Jersey 07102

      Re:  *Federal Trade Commission v. Wyndham Worldwide Corporation, et al.*
            Civil Action No.:  13-1887 (ES) (JAD)

Dear Judge Dickson:

      The FTC's August 26, 2014 response ("FTC Response") to Wyndham's request for a protective order only underscores the importance of such relief.  The Commission fails to justify the relevance or significance of the burdensome new discovery it seeks and makes clear that nothing that Wyndham could provide would ever be sufficient for the FTC.  As the Court is well aware, Wyndham has spent significant time and resources responding to the FTC's requests over the past four years.  But the FTC still wants more.  No private litigant would be able to engage in such conduct, and the FTC should not be able to either.  An order that protects Wyndham from more irrelevant and onerous requests will both cabin the Commission's abusive discovery tactics and help to move this case forward.

      As an initial matter, Wyndham must clear up a number of factual assertions made in the Commission's letter.  *First*, the FTC's suggestion that Wyndham did not cooperate during the agency's two-year investigation is wrong.  Wyndham has already detailed for the Court the extraordinary level of Wyndham's cooperation, which included producing 1,000,000 pages of documents, answering over 50 interrogatories, and conducting over 7 in-person meetings.  Those efforts cost the company over $5 million.  Wyndham moved to quash the FTC's civil investigative demand ("CID") not because it was being uncooperative, but because it ***already had been*** highly cooperative by producing that substantial amount of evidence, and because the CID was an unduly burdensome addition to the heavy costs the Commission had already imposed.  Indeed, it is telling that the FTC voluntarily ***withdrew*** the CID when Wyndham appealed the denial of its motion to quash to the full Commission.  Wyndham's decision to defend its position (after extensive cooperation) rather than submit to an onerous consent decree represents the very core of our adversarial process which the FTC appears intent on undermining.

      Moreover, although the FTC now contends that Wyndham's productions during the investigation contained numerous "irrelevant" documents, those documents were, in fact, responsive to the incredibly broad requests that the Commission served.  Somewhat ironically, Wyndham expressed this exact concern to the Commission in advance of responding to those

G<small>IBBONS</small> P.C.

The Honorable Joseph A. Dickson, U.S.M.J.
September 16, 2014
Page 2

requests—namely, that the breadth of the Commission's requests was so broad that they would lead to the production of irrelevant documents. The FTC, however, flatly refused to narrow the requests, and thus only has itself to blame if it considers some of the produced documents to be "irrelevant." Then and now, the FTC is unsatisfied when Defendants comply with its broad requests and unhappy when Defendants seek specificity.

*Second*, the FTC's suggestion that Wyndham "unilaterally" suspended discovery during the pendency of Defendants' motion to stay rewrites history. For the first four months following the filing of the motion to stay, the FTC engaged in no discovery whatsoever—it did not produce documents, serve interrogatories, request documents from Wyndham, attempt to schedule depositions, or engage in any other discovery conduct. The Commission thus clearly acquiesced in the stay, and its attempts to change the facts now are at best wrong and at worst disingenuous. It also did not make sense to engage in more discovery before the Court held a Rule 16 conference. In fact, as soon as that was accomplished, both parties resumed discovery in earnest. The short hiatus was therefore both practical and largely bipartisan.

*Third*, the FTC's suggestion that Wyndham is now trying to delay discovery until the end of the discovery period is wrong. All delays are entirely the product of the FTC's requests, which are many in number and burdensome in scope. The kind of discovery the Commission has served requires extensive review and multiple productions of an extraordinarily large number of documents. It is also unclear what would ever satisfy the Commission. For example, the FTC complains that Wyndham produced 130,000 pages of documents in the month before the original discovery period deadline. But before it began its final rolling production in advance of that deadline, Wyndham had *already* produced more than 440,000 pages. Moreover, the parties had agreed to rolling productions. Would the FTC rather Wyndham make quicker—but less targeted—productions containing more irrelevant documents? The absurdity of the FTC's grievance is particularly clear when comparing the parties' relative productions. Whereas Wyndham has produced more than 570,000 pages of documents during this litigation alone, not including the one million pages produced during the investigation, the FTC has produced only about 30,000 of its own documents during the entire pendency of this dispute. The FTC's practice of not producing much of anything other than publicly available materials or materials received from third parties undermines the FTC's "nothing-is-ever-enough" response to Wyndham's extensive productions.

With these background facts clarified, Wyndham reiterates its position that it is entitled to the specific relief it seeks in the pending motion.

> 1. **New Requests for Production**

The FTC's explanation of its "need" to issue its 36 new requests for production only confirms Wyndham's position that they are irrelevant and burdensome and properly subject to a protective order. *See Robinson v. Horizon Blue Cross-Blue Shield of N.J.*, No. 12-2981-ES-JAD,

GIBBONS P.C.

The Honorable Joseph A. Dickson, U.S.M.J.
September 16, 2014
Page 3

2013 WL 6858956, at *6 (D.N.J. Dec. 23, 2013) *aff'd*, 2014 WL 3573339 (D.N.J. July 21, 2014) (describing similar requests as "cumulative" and "irrelevant").

*First*, the FTC's representation that it is proceeding in the kind of "tranches" or "layers" that the Court suggested to the parties at the March 21, 2014 Status Conference is misleading. The FTC indicates that its new requests "build[] on the information that the FTC has uncovered during the first tranche of discovery, including documents that Defendants produced between May and July 2014." FTC Response at 3 [08/26/14 ECF No. 234-3]. But, in fact, a large number of the Commission's new requests follow up on specific documents produced during the ***investigation—over two years ago***. *See, e.g.*, Requests No. 78, 79, 80, 91, 94, 98, 99, 100, 101, & 102 [08/14/2014 ECF No. 226-3]. If the FTC really were conducting discovery in tranches, it would not have waited for over two years to ask for those follow-up documents. And nothing about a layered discovery process provides a blank check to the FTC to single-handedly define these tranches based on its own whims and follies and inflict burdens on Wyndham for four years.

*Second*, the Commission's explanation of its need to reissue redundant requests for production proves Defendants' point. FTC Response at 7 (admitting that the Commission is "re-requesting" documents for which it has already asked). Footnote 5 in the FTC's letter underscores just how duplicative these requests really are. *Id.* at 6, n.5 (*compare, e.g.*, new Request No. 88 ("All documents related to the account lockouts referenced at Wyndham-FTC-0195997-0195998") *with* prior Request No. 24 ("All documents relating to account lockouts associated with 1) any of the data breaches, or 2) any Administrative Account.")). The FTC cannot issue such incredibly broad requests early in discovery and then go back and re-issue those same requests, with only minor tweaks, because it is not getting what it hoped for. The Commission is essentially saying that now it is trying to help Defendants by finally pointing out what the Commission ***actually*** wanted in response to all of its earlier requests. That approach is not contemplated by the Federal Rules or by the Court's own description of how discovery should proceed in this case.

*Third*, the FTC's other attempts to identify the relevance and significance of the specific discovery it seeks also fail. For example:

- ***Request No. 111 (documents sufficient to show the average or median incomes of guests).*** Remarkably, the FTC contends that "information about the average income of Wyndham consumers is relevant to the value of the consumers' time spent remedying their payment cards following their exposure as a result of Wyndham's unreasonable data security." *Id.* at 6-7. The request itself is offensive, as it evidences the government's implicit, outrageous assumption that the time of wealthy consumers is more valuable than the time of people of lesser economic means. To suggest that the FTC will provide more protection to one class of consumers than another defies common sense. That purported justification alone demonstrates its irrelevance.

G‍IBBONS P.C.

The Honorable Joseph A. Dickson, U.S.M.J.
September 16, 2014
Page 4

- ***Request No. 82 (all inventories of devices connected to the WH-US domain).*** The FTC attempts to justify this request by arguing that it seeks to better understand this domain through documents. *See id.* at 7. But it already has documents relating to this domain, the deposition testimony of Melissa Taylor, and the potential testimony of any future deponents. Simply wanting more information about an ancillary topic can no longer be sufficient to justify the extensive burdens that result.

- ***Request No. 93 (communications to or from Steve Klein, Justin Harville, Melissa Taylor, Alexander O'Leary, and/or Alton Hill).*** The FTC attempts to justify its new, broad requests seeking all of these documents by arguing that the "the Court never ruled that Wyndham was *not* required to look beyond the files of its five arbitrarily-identified custodians for relevant documents." *Id.* at 8 (emphasis added). But the Court *did* limit the search to five custodians, none of whom are listed here. Tr. of 3/21/14 Hr'g at 20-21 [03/26/14 ECF No. 178]. If the FTC believes it has good cause to change the Court's mind, the proper response is to go back to the Court and seek relief rather than simply issue a slew of new RFPs.

These sample requests, like all of the others, lack the relevance or significance to justify the excessive burden on Defendants.

*Fourth*, the FTC's attempts to pass the blame for these late, repetitive requests fall flat. For example, the FTC's assertion that Defendants withheld consumer names significant to its case is highly misleading. The FTC *already received* consumer names in response to the third-party subpoenas it served on card brands, and there was no need for the Commission to wait for Wyndham to produce them. Wyndham produced these records to the FTC in the same rolling manner that it has produced nearly all of its documents. And the FTC's argument is particularly underwhelming in light of the fact that the Commission had access to many of these names during the course of the investigation and spoke to many of these consumers back in the summer of 2013, well before Wyndham produced this list. Even more importantly, though, that the FTC believes this list of customers is the necessary piece in its case entirely misses the point. It is the FTC's burden to prove not that customers had data stolen but that they experienced substantial harm, and for years now the Commission has had the relevant consumer names and has been unable to do so.

But that is not all the blame the FTC tries to pass. The FTC also wrongly insinuates that Wyndham withheld a witness's description of events ahead of that witness's deposition. But Wyndham did no such thing. In fact, Wyndham produced Melissa Taylor's description of events in May of 2011—a full *three years* before her deposition. Although the FTC did not have the "description of events" narrative written by an entirely separate witness (Justin Harville) —due to legitimate privilege concerns that Wyndham was entirely within its rights to assert and investigate—the FTC has yet to explain how Mr. Harville's description of events was necessary to examine Ms. Taylor, particularly when the Commission *already had* Mrs. Taylor's personal

GIBBONS P.C.

The Honorable Joseph A. Dickson, U.S.M.J.
September 16, 2014
Page 5

written narrative.  Moreover, the FTC will have plenty of opportunity to explore Mr. Harville's written narrative.  Mr. Harville is currently scheduled to be deposed on September 23, 2014, at which time the FTC can explore that description.  But it is disingenuous for the FTC to represent that Wyndham was deliberately withholding a witness's description of events until after that witness was deposed, which is flatly untrue.

Similarly, the FTC's selective quotation of an exchange during the March 21, 2014 Status Conference about the production of the Fishnet report is taken entirely out of context.  To be sure, Wyndham indicated that the FTC had the Fishnet report and related documents and emails.  *See* Tr. at 3/21/14 Hr'g at 33 [03/26/14 ECF No. 178] ("[T]hey have the Fishnet report, they have the documents referenced in the Fishnet report, and they have lots of e-mails regarding the Fishnet reports.").  But Wyndham made no specific representations about this specific Description of Events document.  Rather than a representation about the production of any particular documents, this statement was part of a larger conversation about the number of custodians that Wyndham would be required to search.  In fact, Wyndham actually indicated that it was *unwilling* to "make a representation that everything [relevant to the breaches was] covered by the five [custodians]," but did explain that it chose the custodians it did "in order to try to give the fairest document production" possible.  The FTC's attempt to twist this discussion into a misrepresentation of a different kind is unfair.

*Finally*, the burden on Wyndham to respond to these requests is anything but vague.  As detailed extensively in this and other motions, the FTC's requests would require searching additional custodians—5 additional custodians for RFP No. 93 alone—often over a lengthy time period, and then conducting additional review for relevance, privilege, and work-product issues.  As explained before the Court in March, such a review could take six to eight weeks per custodian at a cost of roughly $300,000 to $400,000 per custodian.  Tr. of 3/21/14 Hr'g at 22 [03/26/14 ECF No. 178].  Beyond the costs for the additional custodial review, based on costs incurred from past requests for production, Wyndham estimates that responding to the remaining RFPs would cost Wyndham more than $500,000, bringing the total expected cost of responding to the FTC's new requests for production to well over $2 million.[1]

### 2. New Interrogatory Requests

The FTC's new interrogatories are similarly burdensome and were not contemplated by the parties or the Court.  Contrary to the FTC's misleading position, Wyndham is not arguing that the Court's order expressly limited the Commission to issuing additional interrogatories based only on material in Defendants' Answer.  But that *was* the explanation that the FTC gave to the Court for why it needed these additional interrogatories in the first place.  The facts here

---

[1] This estimate does not even take into account RFP No. 110, which asks for communications between Wyndham and any third party related to Wyndham's data security practices, the FTC's allegations, or this lawsuit generally.  Such an incredibly broad request could not be reasonably responded to, either through custodial review or targeted searches.

GIBBONS P.C.

The Honorable Joseph A. Dickson, U.S.M.J.
September 16, 2014
Page 6

are simple: (1) the FTC told the Court it needed the additional interrogatories because Defendants had not yet answered its Amended Complaint, and it wanted to reserve interrogatories to focus on any new issues Defendants' might raise; (2) the FTC then served interrogatories that had nothing to do with Defendants' Answer.  Regardless of whether the Court expressly limited the subject matter of the FTC's interrogatories, its representation to the Court and to Defendants was unfair and deceptive.  The fact that the recent interrogatories have nothing to do with the Answer subverts every representation that the Commission has made to this Court about its perpetual need for more information.

Even beyond the misrepresentation the FTC made about its need for these interrogatories, each additional interrogatory is incredibly burdensome, irrelevant, and unwarranted at this stage of the litigation.  For example, the FTC justifies Interrogatory No. 18 by arguing that the industry standards that Wyndham might identify are relevant to the FTC's deception claim.  But, again, the FTC does not appear to understand its own claim.  The Commission's deception count has nothing to do with what *Wyndham* understood its policy to mean, but instead depends on what a reasonable *consumer* would understand that policy to mean.  Researching and responding to such interrogatories at exorbitant cost is unnecessary and senseless.

### 3. *Deposition Limitations*

Proceeding in the kind of "tranches" that the Court contemplated, the next logical "tranche" would involve 30(b)(6) depositions to solidify the critical facts that have been developed and to lay the groundwork for the expert discovery stage of this litigation.  Time after time, Wyndham has asked the FTC for basic information that it needs to make its case—in particular, publicly available data-security standards on which it intends to rely and information about the substantial consumer injury the FTC must prove.  These requests are not broad, fishing-expedition requests like those the FTC issues; in many cases, these are jurisdictional facts necessary for the FTC to maintain its case.  And time and again, the FTC has represented that its experts would have the information Defendants seek.  *See, e.g.*, FTC Ltr. to Court at 6 n.6 [02/21/2014 ECF No. 184]; June 20, 2014 Moriarty Ltr. to Allen [07/18/2014 ECF No. 213-1].  Now, the FTC has taken four individual depositions and none of them have given the FTC useful information.[2]  Contrary to the FTC's suggestion, Defendants are not trying to "obviate[] the need for fact development."  FTC Response at 9.  Rather, a reasonable limitation as fact development proceeds would allow the parties to narrow the operative facts and prepare for the expert stage of this litigation—which both sides agree to be important.

The FTC's arguments about the "problems" it faces scheduling depositions do not make additional individual depositions any more necessary.  As this Court knows and as Wyndham has

---

[2]  The Commission again tells the Court that Wyndham is making false representations that Mr. Burger refused to meet with Defendants.  FTC Response at 9 n.7.  But that is true; for *months*, Mr. Burger refused to do so.  Wyndham's effort to protect its own interests and cease such attempts when it was clear that Mr. Burger was not cooperative were perfectly reasonable, and nothing about Wyndham's statement to that effect is misleading.

GIBBONS P.C.

The Honorable Joseph A. Dickson, U.S.M.J.
September 16, 2014
Page 7

explained to the FTC, civil litigants rarely wait for all documents to be produced before beginning to conduct depositions. Indeed, parties often conduct depositions while document productions are ongoing—particularly when document requests are as broad as the FTC's and require months of work. Limiting the next "tranche" to 30(b)(6) depositions will allow the Court and the parties to determine later whether any more individual depositions are really necessary. Such a plan will narrow the focus of discovery going forward rather than permit the FTC to continue to engage in scattershot discovery in the hope of forcing a settlement.

   We thank the Court for its consideration of this matter. If the Court has any questions, we are available at the Court's convenience.

                     Respectfully,

                     s/ Jennifer A. Hradil
                     Jennifer A. Hradil

cc:  All counsel of record (via ECF)